Good morning, Your Honors. My name is Cynthia Kagiwara, and I'm representing Defendant Appellant John Garcia, IV. There are three issues before the court today. The first concerning the denial of Mr. Garcia's Confrontation Clause rights under the Sixth Amendment. As the panel may recall, Mr. Garcia finished out asking questions on cross-examination, and then the prosecutor came back and asked 36 questions on redirect. At the end of the redirect, the court started to dismiss the witness, and Mr. Garcia's counsel asked, may I ask one more question? The court said no, and then directed immediately that the government should call its next witness. What was the question going to be that would have had a material effect? In other words, even if it was an error, why wasn't it harmless? What was the question, the one question going to be? You know, that's hard for me to say. I was not Mr. Garcia's trial counsel, and so I can't really ask what trial counsel intended to ask. But you have to make a showing. Right, and but, you know, I would point out that the court really didn't allow Mr. Domingo, who was trial counsel, to make a showing because... You have to make a showing now. You have to persuade us that the question would have made any difference, and you've had months or years to try to think about it. So, okay, not what would he have asked, but you tell us what might have been asked that would have made a difference. Well, what could have made a difference, first of all, is that this witness, Mr. Koyunagi, was a crucial witness. As even the government admitted at trial, they were, the government was very dependent on cooperating witnesses, and specifically in Mr. Garcia's case, there was no law enforcement identification of Mr. Garcia being involved in any kind of drug transactions. In fact, they did not even know about Mr. Garcia until they executed the search warrant on the apartment. And Mr. Koyunagi was a crucial witness because he was the one who allegedly identified Mr. Garcia as receiving large amounts of cash and bringing them to his co-defendant, Mr. Foster. So, as I read the transcript, the Defense Council impeached Mr. Koyunagi's testimony based on what he was getting as part of the plea deal, and the government on redirect attempted to rehabilitate him by clarifying some of what he was getting on the plea deal, and that he agreed to testify truthfully and so the District Court concluded that that wasn't new matter, that was all relating to whether, how impeached Mr. Koyunagi was. So that's why it's not clear from the transcript that there would be any further question, would presumably just be impeachment again. So that was why I had a question about why isn't, even if it were an error and the District Court was wrong about it the trial. Well, and again, I can't really make a record on what would have been asked because that would have been bringing in matters outside of the record, because I wasn't the trial counsel. You can, you can argue what might have been asked. Right, right. Well, and that's what we're waiting to hear. Right. Still kind of waiting for what that question or questions would have been. Well, for one thing, Mr., the government on redirect brought out that there were these text messages that Koyunagi sent to the co-defendant, Foster, and it would have been helpful for Mr. Garcia if his counsel could have asked what, were there ever any text messages with Mr. Garcia? Well, why couldn't they have been covered on cross-examination? We're talking about a recross. Right. It should be focused on whatever new came up during the redirect. I'm not sure what new came up, but this thing about Foster wasn't new. It could have been asked about before. Right, but the text messages was something new that was brought up, I redirect. In addition, the court, by not allowing defense counsel to ask even one question after the prosecutor has asked 36 questions, left the jury with the impression that whatever the defense had to say didn't matter. Redirect is not uncommon. Recross is. It's like in this courtroom. You'll have a chance at rebuttal, and your colleague will not have a chance to speak after you. That's just how it is. So, so telling me that there were 30 questions asked or 36 questions asked on redirect doesn't tell me anything about why recross should have been permitted since it usually isn't. Well, in this case, like I said, there were these questions about text messages that didn't have anything at all to do with Garcia, and it's possible that defense counsel could have fact, again, that this was something new, that Koyanagi only communicated with Foster. And again, as I stated before, Koyanagi was a very important witness to the government, and so the fact that defense counsel was not allowed to get into that at all is problematic. Moving on to the second issue, the court also impermissibly allowed the government to introduce a prior conviction that was more than 10 years old, and this conviction was not a conviction for possession with intent to sell or distribution. It was a conviction for possession of a pipe with a tiny bit of methamphetamine residue in it. And under Hawaii law, Mr. Garcia pled guilty to promoting a dangerous drug in the third degree. Under Hawaii law, that can be any amount of drugs. The problem here is the court seemed to indicate that it was allowing this, citing cases on possession with intent to distribute. In addition, the court also seemed to find that this case was not too remote in time, relying on Federal Rule of Evidence 609, which we submit is not appropriate here. The appropriate time is what happened at the time that Mr. Garcia was arrested back in 2003 with the meth pipe. Well, even assuming that admission of his prior conviction was error, where's the harm, given the fact that there are several witnesses who testified to his direct involvement? There are several witnesses who testified to his direct involvement, but even his direct involvement contains stuff such as smoking the consistent with being a user, not a seller. The government says that it needed to prove that Garcia knowingly possessed the meth, and so that this prior conviction shows that he knew that what he was handling was meth. So why is that wrong? Well, there really wasn't an issue that there was meth discovered in the apartment, and there was no... There was no meth in the apartment? There was. There was a huge amount. Right. So the government has to show every, carry its burden as to every element, whether or not the defense is arguing it. So the government certainly has to show, carry its burden of proof beyond reasonable doubt that he knew it was meth. That's at least the government's argument. And so the prior conviction, they say, goes to whether he knew it was meth or not. Do you disagree with that? Well, I know that that is the government's burden, and that is, I know that that's the government's allegation, but in this case, the prior was for such a small quantity. And so I think, you know, let's assume, yes, that that's one of the factors, one of the four factors that the government has to prove. They can't meet all the other factors as well, especially given how remote in time this was and how dissimilar it was to the instant case. And there are plenty of cases that say, you know, a user conviction is, cannot be used to prove possession with intent to distribute or conspiracy. You want to save some time for rebuttal? Yes, I would. Thank you. We'll hear from the government. Aloha, good morning. My name is Chris Allen, Komo'o Thomas for United States. With regard to the Confrontation Clause, the first issue, the court, the court essentially asked the million-dollar question, what was the one question that Defense Counsel wanted to raise? You know, that had to be one heck of a question, considering the harmless error analysis that the judge brought out. The cross-examination was fairly extensive and it covered all the motivations that the witness, Sheldon Koyanagi, had to lie. It covered the dispute agreement. It covered the fact that he was cooperating against Foster, that he was shown evidence that Foster tried to place the burden on Koyanagi, all of his motivations. However, in redirect examination, the government focused primarily on the plea agreement, the plea agreement and its provisions. Counsel says that there was new matter in the redirect surrounding what she calls text messages. What's your response to that? Well, you know, Your Honor, with regard to the text message, there was and it was, I believe, one or two questions, but that was the extent of it. And that related to Sheldon Koyanagi talking about matters that he was shown or information that was shared with him, because on cross-examination, counsel had tried to imply that the government fed Mr. Koyanagi information, that the government tried to manipulate his testimony. And so the redirect examination was purely to show that we just showed him evidence. We didn't affect his testimony. We just tried to help him recollect the With regard to the second issue, the prior conviction, the government believes that all the elements for the prior conviction to be admitted were met. What's important to realize is that this case was actually developed in two phases. The first phase was count one, which was purely an execution of a search warrant. That was the extent of the case. Now over time, based on further investigation, co-defendants in unrelated cases brought up their involvement with the defendant, John Garcia. As a result, there was a superseding indictment that added the conspiracy charge. So prior to that superseding indictment, it was a very relevant and critical question about whether these drugs found in the apartment right near where Garcia was found to be sleeping, whether he had knowledge of that. It was very relevant. Now even after the conspiracy charge was added, that's still an important element because we still have to prove count one, which occurred on a single day on the day that the search warrant was executed. So his knowledge, the lack of mistake, an accident, that element was still critical to count one. And that's how that prior conviction relates to this case. With regard to the third issue in this brief, the court's denial for mitigating role, the reduction, I think the court is fairly expressed. It was expressed very well by the court that he had considered all the factors that are relevant to that mitigating role. He expressly stated that. And what's also apparent from the record is Amendment 794, that had already been passed. It had already been implemented. It was already in language. And prior counsel for Mr. Garcia had briefed that issue and had submitted his brief and the court expressly stated on the record that he had read it and that he considered it. And then we have second counsel, Ms. Kagiwara, who appeared at the sentencing, who did the same thing really. She briefed that same mitigating role section of the sentencing guidelines and even argued it. And then to say that the court didn't consider it, it really doesn't make any sense because the court saw it not only once but twice and expressly stated that he considered all the factors. The law that the Defense that case says, Quintero Leyva, even within that opinion, the Ninth Circuit says that these factors should, the court should consider it. And that case can be factually distinguished from our case because in this case that sentencing guideline provision was retroactively applied. So that was a case where the court didn't have an opportunity to consider the changes that was implemented in that sentencing guideline. That's not the case that we have here. Amendment 794 was already implemented, was already in the wording, was already considered by the court. And there is no case law that the defendant cites or can cite because there is no case law that says that the judge has to actually tick off every factor that's set forth in that sentencing guideline reduction. There's no case law that says that. The case only states that you should consider it. It doesn't ask for anything more than that. And the court expressly said that it did. That's the government's arguments. If there's any questions? Apparently not. Thank you. Thank you very much. Your Honor, addressing the last argument first because I didn't get to address it the first time around. The issue here is whether the court identified the correct guideline and interpreted it correctly. And here the problem is the guideline was amended in 2015. And both the probation officer and the district court stated things that seemed to indicate they were applying an old version of the guideline. The probation officer first indicated that this guideline should be applied infrequently, citing application note, I believe, 2, to the guideline. That application note does not state that. And in fact, the commission said one of the reasons they amended the guideline was because the In addition, the amendment to the guideline stated that a defendant should be considered for this role even if they played an integral or indispensable part in the offense. But didn't the trial judge say he considered all of the factors listed? No, not essentially. What the district court said was that he considered the briefs. He had considered the Section 3B1.2. Right. And the factors which were brought to his attention by defense counsel. He considered all of that, did he not? He stated that. But what I wanted to point out to your honors was that he actually said one of the reasons he was rejecting the role is he found that Mr. Garcia played an integral role. And that's specifically what the amendment said should not be considered as kicking somebody out from the guideline. And again, even though defense counsel before me and also myself briefed the five factors, the court did not go through those factors. And there is case law that suggests that when the defense has raised a non-frivolous argument, the better means to deal with it is for the district court to specifically address those arguments and tether it to a specific guideline or statute in rejecting it. You're over time now. Thank you. Thank you. We appreciate the arguments in the case of United States v. John Garcia IV.
judges: O'scannlain, Clifton, Ikuta